LEXSEE 2003 US DIST LEXIS 5575

In re Ski Train Fire in Kaprun, Austria on November 11, 2000; This Document Relates To: Defendant Verbund-Austrian Hydro Power AG

MDL No. 1428 (SAS), 01 Civ. 7342

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

2003 U.S. Dist. LEXIS 5575

April 3, 2003, Decided
April 4, 2003, Filed

**SUBSEQUENT HISTORY:** Transferred by *In re Ski Train Fire in Kaprun, Aus.*, 257 F. Supp. 2d 717, 2003 U.S. Dist. LEXIS 6703 (S.D.N.Y., Apr. 21, 2003)

**PRIOR HISTORY:** *In re Ski Train Fire*, 257 F. Supp. 2d 648, 2003 U.S. Dist. LEXIS 4264 (S.D.N.Y., Mar. 19, 2003)

**DISPOSITION:** [*1] Defendant Austrian Hydro Power's motion to dismiss for lack of personal jurisdiction granted.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiffs, the parents and grandparents of six Americans who died in a ski train fire in Austria, sued numerous defendants, including defendant Austrian hydro power company. The power company moved to dismiss the action on four grounds: for lack of personal jurisdiction, improper service of process, forum non conveniens, and foreign sovereign immunity.

**OVERVIEW:** As evidence of the company's doing business in New York for purposes of personal jurisdiction under *N.Y. C.P.L.R. § 301*, plaintiffs relied on a series of nine cross-border leasing transactions involving properties in Austria that closed in New York. The court found, however, that these sporadic financial transactions, and the activities in support thereof, did not constitute "doing business" in New York. Likewise, the company's maintenance of bank accounts in New York for the limited purpose of receiving the proceeds of the leasing transactions could not form the predicate for general jurisdiction in New York. Nor did the retention of advisors or counsel in New York to assist with these transactions suffice to subject the company to general jurisdiction. Combining the creation and use of a website in New York with the leasing transactions was still insufficient to confer jurisdiction. By contrast, the company showed that it lacked meaningful contacts with New York and could not be said to have conducted "systematic and continuous" business there. Having failed to make a prima facie case of jurisdiction, plaintiffs were not entitled to jurisdictional discovery.

**OUTCOME:** The court granted the Austrian hydro power company's motion to dismiss for lack of personal jurisdiction. The court also found that service of process was improper, but the company may have waived the issue, and defects in the service of process did not warrant dismissal; any future service, however, needed to comply with Austrian law. The other bases for the company's motion were not addressed.

**CORE TERMS:** leasing, doing business, translation, financing, personal jurisdiction, continuous, discovery, service of process, general jurisdiction, confer jurisdiction, jurisdictional, foreign country, long-term, forum state, systematic, subsidiary, mail, investor, immunity, rogatory, website, lessee, collateral, quotation, advisors, lack of personal jurisdiction, motion to dismiss, foreign sovereign, declaration, cross-border

**LexisNexis(R) Headnotes**

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*
*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Motions to Dismiss*
[HN1] A court is obligated to dismiss an action against a defendant over whom it has no personal jurisdiction. Plaintiffs bear the ultimate burden of establishing, by a preponderance of the evidence, that the court has jurisdiction over the defendant. However, prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith legally suffi-

cient allegations of jurisdiction, i.e., by making a prima facie showing of jurisdiction. Plaintiffs can make this showing through their own affidavits and supporting materials, containing an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant. Thus, the court may consider materials outside the pleadings. In so doing, the court must view all of the allegations in the light most favorable to plaintiffs and resolve all doubts in plaintiffs' favor.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*
[HN2] New York subjects a foreign corporation to general jurisdiction if it is "doing business" in the state. *N.Y. C.P.L.R. § 301*. Under this test, a foreign corporation is amenable to suit in New York if it is engaged in such a continuous and systematic course of doing business there as to warrant a finding of its presence in the jurisdiction. The term doing business is used in reference to foreign corporations to relate to the ordinary business which the corporation was organized to do. It is not the occasional contact or simple collateral activity which is included. The doing business standard is a stringent one because a corporation which is amenable to the court's general jurisdiction may be sued in New York on causes of action wholly unrelated to acts done in New York.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*
[HN3] To determine whether a foreign corporation is doing business in New York, courts have focused on a traditional set of indicia: (1) whether the company has an office in the state; (2) whether it has any bank accounts or other property in the state; (3) whether it has a phone listing in the state; (4) whether it does public relations work there; and (5) whether it has individuals permanently located in the state to promote its interests. No one contact is determinative.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*
[HN4] A foreign defendant is not "present" in New York for the purposes of jurisdiction simply because it has engaged in financing transactions there.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*
[HN5] "Raising financing" does not constitute "doing business" under *N.Y. C.P.L.R. § 301*.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*
[HN6] The fact that a foreign corporation has a website accessible in New York is insufficient to confer jurisdiction under *N.Y. C.P.L.R. § 301*.

*Civil Procedure > Pleading & Practice > Service of Process > Methods of Service*
*International Law > Dispute Resolution > Service of Process*
[HN7] *Fed. R. Civ. P. 4(f)* and (h) provide that, in the absence of an internationally agreed method of service, such as the Hague Convention, the following methods of service may be effected upon individuals or entities in a foreign country, provided that service is reasonably calculated to give notice: (A) in the manner prescribed by the law of the foreign country for service in that country in an action in any of its courts of general jurisdiction; or (B) as directed by the foreign authority in response to a letter rotary or letter of request; or (C) unless prohibited by the law of the foreign country, by (i) delivery to the individual personally of a copy of the summons and the complaint; or (ii) any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the party to be served; or (3) by other means not prohibited by international agreement as may be directed by the court.

*Civil Procedure > Pleading & Practice > Service of Process > Methods of Service*
*International Law > Dispute Resolution > Service of Process*
[HN8] In Austria, the direct service of foreign legal documents by foreign authorities or by private individuals without the assistance or consent of Austrian authorities is regarded as an infringement of Austria's sovereignty. Service of foreign legal documents must be effected by letters rogatory through diplomatic channels, and in the manner prescribed by Austrian law for the service of such documents.

*Civil Procedure > Pleading & Practice > Service of Process > Waiver of Service*
*International Law > Dispute Resolution > Service of Process*
[HN9] Under Austrian federal law, service of a foreign document in a foreign language, to which no certified German translation is attached, shall only be permissible provided the recipient is willing to accept it. Acceptance is presumed unless within three days of the time of service the recipient instructs the Austrian authority that served the document to refuse acceptance.

*Civil Procedure > Pleading & Practice > Service of Process > Methods of Service*
[HN10] While *Fed. R. Civ. P. 4(f)(3)* provides for substitute service as may be directed by the court, any such service must comport with the laws of the foreign country.

COUNSEL: For Plaintiffs: Edward D. Fagan, Esq., Fagan & Associates, Jay J. Rice, Esq., Randee Matloff, Esq., Nagel, Rice, Dreifuss & Mazie, LLP, Livingston, NJ.

For Plaintiffs: Robert A. Swift, Esq., Hilary Cohen, Esq., Kohn, Swift & Graf, PC, Philadelphia, PA.

For Defendant: Charles G. Moerdler, Esq., Bruce H. Schneider, Esq., Deborah L. Goldstein, Esq., Stroock & Stroock & Lavan LLP, New York, New York.

JUDGES: SHIRA A. SCHEINDLIN, U.S.D.J.

OPINIONBY: SHIRA A. SCHEINDLIN

OPINION:

OPINION AND ORDER

SHIRA A. SCHEINDLIN, U.S.D.J.:

Plaintiffs, the parents and grandparents of six Americans who died in a ski train fire on November 11, 2000 in Kaprun, Austria, brought several individual actions against numerous defendants. The Judicial Panel on Multidistrict Litigation ("MDL Panel") consolidated these suits for pretrial purposes before this Court. Defendant Verbund-Austrian Hydro Power AG ("AHP") now moves to dismiss this action on four grounds: (1) lack of personal jurisdiction; (2) improper service of process; (3) forum non conveniens; and (4) foreign sovereign immunity. n1 For the reasons set forth below, AHP's [*2] motion to dismiss for lack of personal jurisdiction is granted. n2

> n1 AHP jointly moved to dismiss with defendant Tauern Touristik GmbH ("TTG"). However, plaintiffs have voluntarily discontinued the action against TTG. See Plaintiffs' Brief in Opposition to AHP's Motion to Dismiss ("Pl. Br.") at n.1.

> n2 Because the motion to dismiss based on lack of personal jurisdiction is granted, I do not address the doctrine of forum non conveniens or foreign sovereign immunity. Moreover, the issue of whether immunity should be extended to indirectly owned subsidiaries of foreign governments, upon which AHP relies, is currently before the Supreme Court. See *Dole Food Co. v. Patrickson, 536 U.S. 956, 153 L. Ed. 2d 834, 122 S. Ct. 2657 (2002)* (granting certiorari to review the Ninth Circuit's decision in *Patrickson v. Dole Food Co., 251 F.3d 795 (9th Cir. 2001))*. Thus, any reconsideration of my ruling on foreign sovereign immunity in *In re Ski Train Fire in Kaprun, Austria on November 11, 2000 (GBK), 198 F. Supp. 2d 420 (S.D.N.Y. 2002)* ("Kaprun GBK"), appeal docketed, No. 02-7391 (2d Cir. June 26, 2002), will await the Supreme Court's decision in Dole and the Second Circuit's ruling on GBK's appeal.

[*3]

I. BACKGROUND

A. The Moving Defendant

AHP is a subsidiary of Oesterreichische Elektrizitaetswirtschafts AG ("OE AG"), an Austrian holding corporation whose subsidiaries own and operate the vast majority of Austria's electric generation and distribution system. See 11/26/02 Declaration of Dr. Robert Kobau, Head of the Office of the Management Board of AHP ("Kobau Dec."), P 2. AHP is Austria's largest electricity producer; it operates 89 power plants and accounts for approximately 40% of Austria's domestic power generation. See id. P 4. As part of its hydro-electric power generation, AHP operates the high-altitude Wasserfallboden and Mooserboden reservoirs. n3

> n3 The reservoirs are located approximately six kilometers from the Alpine Center in the Kitzsteinhorn ski area, which is where the fire occurred, and are separated by a high ridge of mountains. See 11/22/02 Declaration of Mag. Herbert Winkler, Managing Director of TTG, a subsidiary of OE AG ("Winkler Dec."), P 5. The reservoirs are not accessible by the ski train or lifts of the Kitzsteinhorn ski area. See id.

[*4]

B. Procedural History

On December 26, 2001, this Court issued an order requesting that the judicial authorities of Austria effect service of process on AHP through the execution of letters rogatory. See 12/26/01 Order, Ex. 15 to Pl. Br. On May 24, 2002, the District Court for the Inner City of Vienna ("Vienna Court") delivered to AHP a copy of the Complaint in this litigation, together with an uncertified German translation of that document. See Kobau Dec. P 20. AHP applied to the Vienna Court for an order declaring the attempted service invalid and ineffective under Austrian law because the translation did not comport with Austrian legal requirements. n4 See id. The order was granted on June 10, 2002. See English Translation of

Vienna Court Order, Ex. 3 to Kobau Dec.

> n4 For the Austrian legal requirements regarding translations, see supra Part V n.16.

On August 29, 2002, this Court directed during a telephone conference that service be made pursuant to *Fed. R. Civ. P. 4(f)* by [*5] regular mail. On or about September 4, 2002, AHP received by ordinary mail at its offices in Vienna a copy of the Complaint in this litigation and the same uncertified translation that the Vienna Court had held to be invalid under Austrian law. See Kobau Dec. P 21.

## II. PERSONAL JURISDICTION

Plaintiffs contend that the pleadings and affidavits submitted on this motion are sufficient to make out a prima facie showing that this Court has personal jurisdiction over AHP pursuant to *New York Civil Practice Laws and Rules § 301* (McKinney 2002) ("*CPLR § 301*"). See Pl. Br. at 14. Plaintiffs argue, in the alternative, that they should be permitted to take jurisdictional discovery to demonstrate the existence of personal jurisdiction. n5 See id. at 14-15.

> n5 On or about May 8, 2002, the Court stayed discovery pending the resolution of the jurisdictional motions.

### A. Legal Standard

[HN1] A court is obligated to dismiss an action against a defendant over whom it has no personal jurisdiction. [*6] See *Fed. R. Civ. P. 12(b)(2)*; *Laborers Local 17 Health and Benefit Fund v. Philip Morris, Inc., 26 F. Supp. 2d 593, 597 (S.D.N.Y. 1998)*. Plaintiffs bear the ultimate burden of establishing, by a preponderance of the evidence, that the court has jurisdiction over the defendant. See *Kernan v. Kurz-Hastings, Inc., 175 F.3d 236, 240 (2d Cir. 1999)*; *Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 507 (2d Cir. 1994)*. However, "prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith ... legally sufficient allegations of jurisdiction, i.e., by making a prima facie showing of jurisdiction." *Jazini v. Nissan Motor Co., 148 F.3d 181, 184 (2d Cir. 1998)* (internal citations and quotation marks omitted); *Koehler v. Bank of Bermuda, Ltd., 101 F.3d 863, 865 (2d Cir. 1996)*. Plaintiffs "can make this showing through [their] own affidavits and supporting materials, containing an averment of facts that, if credited ..., would suffice to establish jurisdiction over the defendant." *Whitaker v. American Telecasting Inc., 261 F.3d 196, 208 (2d Cir. 2001)* [*7] (internal citations and quotation marks omitted). Thus, the court may consider materials outside the pleadings. See *Hsin Ten Enter. USA, Inc. v. Clark Enter., 138 F. Supp. 2d 449, 452 (S.D.N.Y. 2000)*. In so doing, the court must view all of the allegations in the light most favorable to plaintiffs and resolve all doubts in plaintiffs' favor. See *A.I. Trade Fin., Inc. v. Petra Bank, 989 F.2d 76, 79-80 (2d Cir. 1993)*.

### B. New York Law on Personal Jurisdiction

[HN2] New York subjects a foreign corporation to general jurisdiction if it is "doing business" in the state. See *CPLR § 301* (codifying caselaw that utilizes "doing business" standard); *Aerotel Ltd. v. Sprint Corp., 100 F. Supp. 2d 189, 191 (S.D.N.Y. 2000)* (interpreting *CPLR § 301*). Under this test, "a foreign corporation is amenable to suit in New York if it is 'engaged in such a continuous and systematic course' of 'doing business' here as to warrant a finding of its 'presence' in this jurisdiction." *Aerotel, 100 F. Supp. 2d at 191-92* (quoting *Frummer v. Hilton Hotels Int'l Inc., 19 N.Y.2d 533, 536, 281 N.Y.S.2d 41, 227 N.E.2d 851 (1967))*. [*8] "The term 'doing business' is used in reference to foreign corporations to relate to "the ordinary business which the corporation was organized to do ... It is not the occasional contact or simple collateral activity which is included." *Bryant v. Finnish Nat'l Airline, 22 A.D.2d 16, 253 N.Y.S.2d 215, 219-20 (1st Dep't 1964)* (internal citation omitted), rev'd on other grounds, *15 N.Y.2d 426, 260 N.Y.S.2d 625, 208 N.E.2d 439 (1965)*. "The doing business standard is a stringent one because a corporation which is amenable to the Court's general jurisdiction may be sued in New York on causes of action wholly unrelated to acts done in New York." *Jacobs v. Felix Bloch Erben Verlag Fur Buhne Film Und Funk KG, 160 F. Supp. 2d 722, 731 (S.D.N.Y. 2001)* (internal quotation marks omitted).

[HN3] To determine whether a foreign corporation is doing business in New York, courts have focused on a traditional set of indicia: (1) whether the company has an office in the state; (2) whether it has any bank accounts or other property in the state; (3) whether it has a phone listing in the state; (4) whether it does public relations work there; and (5) whether [*9] it has individuals permanently located in the state to promote its interests. See *Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 98 (2d Cir. 2000)* (citations omitted). No one contact is determinative. See *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 570 (2d Cir. 1996)* ("Contacts with the forum state should not be examined separately or in isolation. There is no talismanic significance to any one contact or set of contacts that a defendant may have

with a forum state; courts should assess the defendant's contacts as a whole."); *Landoil Res. Corp. v. Alexander & Alexander, Servs., Inc., 918 F.2d 1039, 1043 (2d Cir. 1990)* ("The Court must therefore analyze a defendant's connections to the forum state 'not for the sake of contact-counting, but rather for whether such contacts show a continuous, permanent and substantial activity in New York.'") (quoting Weinstein, Korn & Miller, New York Civil Practice, P 301.16, at 3-32)).

### C. Jurisdictional Allegations

Plaintiffs' argument is based on the following jurisdictional allegations, which come from the AHP Complaint and plaintiffs' opposition papers and supporting [*10] materials.

AHP is an Austrian corporation with its principal place of business located in Vienna, Austria. See AHP Complaint ("AHP Comp."), Ex. 6 to 11/26/02 Declaration of Bruce H. Schneider, counsel for AHP ("Schneider Dec."), P 3. In an effort to exploit the liberalization in the Austrian energy market created by legislative reform in the 1990s, AHP devised a strategy for cross-border leasing transactions ("leasing transactions") in which an asset (power station) is leased to trusts set up under United States law (principal leasing) and then leased back to AHP for a shorter period (subleasing). n6 See AHP Compl. PP 3b, 3c; 2001 Annual Report ("Annual Report"), Ex. 8A to Cohen Dec. (describing leasing transactions); Excerpts from the 12/31/00 Report about the Corporate Value of AHP ("12/31/00 Report"), Ex. 18 to Cohen Dec. (same). In other words, Austrian-based assets are pledged as collateral for capital/loans provided by United States financial institutions, n7 see Amended Class Action Complaint ("Am. Compl."), Ex. 3 to Cohen Dec., P 232, and AHP is obligated to make periodic payments to the long-term lessee over the life of the sub-lease (e.g., 70-year term), [*11] see Wenzel Dec. P 14. The assets that are the subject of these transactions are located in Austria and title to those assets remains with AHP in Austria. n8 See id. P 14.

> n6 In the last several years, AHP has entered into nine such leasing transactions - five in 1999, three in 2000, and one in 2001. See 6/01 Declaration of Dr. Alexander Wenzel, Head of Treasury and Finance for OE AG ("Wenzel Dec."), Ex. 6A to 12/30/02 Declaration of Hilary Cohen, counsel for plaintiffs ("Cohen Dec."), P 14. In none of these transactions were the long-term lessees organized under New York law. See id.

> n7 The New York based financial institutions with which AHP is engaged include: Deloitte & Touche, Fleet Bank, First Union, AIG, State Street, and Chrysler Capital. See Exs. 7E, 7F, 7G, 7I, 7J, 7K, 10B, 10C, 10E, 10F, 10I, and 18 to Cohen Dec. (articles referencing companies with which AHP has negotiated leasing contracts). Although the AHP Complaint alleges that AHP's engagement with AIG related to the purchase of insurance, see AHP Compl. P 3f, plaintiffs now acknowledge that AHP's relationship with AIG was limited to the provision of equity for lease-back transactions. See Pl. Br. at 8 n.7 (citing exhibits 7G, 7J, 10F, and 18 to Cohen Dec.); see also Kobau Dec. P 16 (denying that AHP purchased insurance through AIG).

[*12]

> n8 Cross-border leasing transactions are sometimes structured as a sale and leaseback of the assets. The transactions by AHP, however, did not involve a sale of any of its assets, but rather a long-term lease of the assets. See Wenzel Dec. P 14 n.3.

The leasing transactions were closed in New York. See id. P 17. As a convenience, the proceeds of these leases were deposited temporarily in AHP back accounts in New York and elsewhere that were "opened specifically for purposes of the transactions." Id.; see also Plaintiffs' First Set of Interrogatories Addressed to OE AG ("Interrogatories"), Ex. 1 to Cohen Dec., P 10(b) (stating that, since 1999, AHP has had an account with Citibank N.A. from which the disbursements for leasing engagements are made). Any balances due to AHP were wire-transferred to AHP accounts in foreign locations after transaction-related expenses were paid. See Wenzel Dec. P 14. In 2001, 20% of AHP's net cash increase was directly attributable to leasing transactions. n9 See Annual Report, Ex. 8B to Cohen Dec. As an additional means of securing its obligations [*13] under the leasing transactions, AHP invested "a share of the inflow of funds" in certain United States treasuries. 12/31/00 Report; see also 8/21/01 Declaration of Dr. Alexander Wenzel, Ex. 6B to Cohen Dec., P 5; Interrogatories P 10(b).

> n9 These transactions are equally attractive to banks, insurance companies, and other investors because the long-term lessee is permitted under United States tax laws to depreciate the leased assets. See Wenzel Dec. P 14; Steve Metcalfe, Big-ticket in the USA, Asset Fin. Int'l. (1999), Ex. 7D to Cohen Dec. (describing leasing transactions as an "abuse of the US tax system" akin to corporate tax sheltering).

For purposes of the leasing transactions, AHP has

accepted the jurisdiction of New York courts, agreed upon the application of New York law, and agreed not to make forum challenges in any action related to the subject matter of the transactions. See Guaranty Agreement, Ex. 10A to Cohen Dec. (filed under seal). For assistance with these transactions, AHP has [*14] retained the New York based law firm of White & Case LLP. See AHP Compl. P 3d; Menaker Leaves White & Case for Shearman, Asset Fin. Int'l (2001), Ex. 7L to Cohen Dec. (acknowledging that AHP was one of Menaker's clients while at White & Case); Die Presse newspaper advertisement, Ex. 11 to Cohen Dec. (indicating that White & Case is AHP's United States counsel).

In addition to the allegations related to the leasing transactions, plaintiffs allege that AHP maintains a website designed to attract United States and New York investors and/or customers, see id. P 3h, that American shareholders own a percentage of their stock, see AHP Compl. P 3e, and that AHP entered into a consortium with a United States utility company to purchase an Italian company, see id. P 3a. Plaintiffs summarize AHP's alleged contacts with New York as follows: "Defendant contracts with New York based corporations, buys and sells in the New York business market, engages in asset securitization transactions, and engages the New York law firm of White & Case on a regular basis." Pl. Br. at 16.

### D. Analysis

The AHP Complaint lists eight purported indicators of AHP's presence in New York, the [*15] majority of which relate to a series of nine cross-border leasing transactions involving properties in Austria that closed in New York. See AHP Compl. PP 3a-h. These sporadic financial transactions — and the activities in support thereof — do not constitute "doing business" in New York.

The exhibits submitted by plaintiffs on this motion make clear that the leasing transactions were merely a means of financing for AHP. See, e.g., Wenzel Dec. P 14 (indicating that leaseback transactions are used by AHP to obtain financing for its capital investments and operations); Annual Report (stating that the "entire inflow of funds [from leasing transactions] was used ... for financing purposes"). A long line of cases establishes that [HN4] a foreign defendant is not "present" in New York for the purposes of jurisdiction simply because it has engaged in financing transactions here. n10 See, e.g., Clarke v. Fonix Corp., 1999 U.S. Dist. LEXIS 2143, No. 98 Civ. 6116, 1999 WL 105031, at *5 (S.D.N.Y. Mar. 1, 1999) ("Raising financing is not a form of 'doing business' for the purpose of § 301; it if were, then almost every company in the country would be subject to New York's jurisdiction."), aff'd, [*16] 199 F.3d 1321 (2d Cir.); Crucible Ventures, Inc. v. Futuresat Indus., Inc., 1990 U.S. Dist. LEXIS 1622, No. 88 Civ. 4251, 1990 WL 16140, at *2 (S.D.N.Y. Feb. 15, 1990) ("this Court does not find, as a legal matter, that the solicitation and execution of business loans ... constitutes 'doing business' for jurisdictional purposes"); Nordic Bank PLC v. Trend Group Ltd., 619 F. Supp. 542, 566 (S.D.N.Y. 1985) (holding that the Nordic banks' marketing of more than "$ 100 million of commercial paper through New York brokerage firms" was "limited, sporadic, and not so substantial and continuous as to support a finding that the banks are doing business" in New York); Daniel v. Am. Bd. of Emergency Med., 988 F. Supp. 127 at 224 ("the Defendants' issuance of bonds to obtain capital, and visits by each Defendant to help consummate the bond sales do not amount to the continuous business necessary to support jurisdiction under Section 301"); Robbins v. Ring, 9 Misc. 2d 44, 166 N.Y.S.2d 483, 484-85 (Sup. Ct. N.Y. Co. 1957) (finding that corporation was not "doing business" in New York based on negotiations undertaken in New York regarding the private placement of certain convertible [*17] notes in the sum of $3,000,000 because financial arrangements alone are insufficient to confer jurisdiction). n11

n10 The rationale behind this rule is that financing transactions are clearly collateral to a corporation's primary business. Daniel v. American Bd. of Emergency Med., 988 F. Supp. 127, 224 (W.D.N.Y. 1997) ("borrowing money for capital or operating purposes is an activity incidental to the hospital Defendants' primary business") (emphasis added).

n11 Rather than attempt to distinguish leasing transactions from the types of financing transactions that have been found insufficient to support jurisdiction under section 301, plaintiffs raise red-herrings. Plaintiffs suggest, for example, that the magnitude of the financing derived from the leasing transactions illustrates its importance to AHP's general corporate purposes. See Pl. Br. at 6. However, the value of, and profits derived from, investment capital does not bring a foreign company within the purview of section 301. See, e.g., Nordic Bank, 619 F. Supp. at 565-66 (holding that foreign banks were not subject to jurisdiction in New York although they "marketed in excess of $100 million of commercial paper through New York brokerage firms" and have "underwritten several multi-million dollar securities offerings" in New York). Plaintiffs also argue that the long-term lessees in these transactions derived benefits under United States tax laws. See Pl. Br. at 6. But the tax benefits that inure to United States investors cannot create jurisdiction as to AHP.

[*18]

Likewise, AHP's maintenance of bank accounts in New York for the limited purpose of receiving the proceeds of the leasing transactions before transferring them to accounts outside the United States cannot form the predicate for general jurisdiction in New York. See *Colson Servs. Corp. v. Bank of Baltimore, 712 F. Supp. 28, 32 (S.D.N.Y. 1989)* (finding no personal jurisdiction where "banking transactions in New York were limited to the maintenance of custodial accounts in which securities ... were deposited for safekeeping.");  *National Am. Corp. v. Federal Republic of Nigeria, 425 F. Supp. 1365, 1369 (S.D.N.Y. 1977)* (acknowledging that the "isolated act of maintaining back accounts" in New York "does not constitute doing business") (citation omitted); *Fremay, Inc. v. Modern Plastic Mach. Corp., 15 A.D.2d 235, 222 N.Y.S. 2d 694, 700 (1st Dep't 1961)* (finding "existence of a bank account in New York by itself" insufficient to show foreign corporation is doing business in New York). Compare with *United Rope Distrib., Inc. v. Kimberly Line, 785 F. Supp. 446, 450 (S.D.N.Y. 1992)* (holding New York bank account satisfied [*19] section 301 because "almost all" of defendant's business, including payment of wages, was accomplished through the New York account).

Nor will the retention of advisors or counsel in New York to assist with these transactions suffice to subject AHP to general jurisdiction in New York. See *PaineWebber Inc. v. Westgate Group, Inc., 748 F. Supp. 115, 120 (S.D.N.Y. 1990)* (defendant's "desire to get a big 'New York' investment house is not a purposeful availment of New York as a forum just as 'Get me a New York lawyer,' without more, is not an invocation of in personam jurisdiction in the forum state of the lawyer's practice") (citations omitted); *Bush v. Stern Bros. & Co., 524 F. Supp. 12, 14 (S.D.N.Y. 1981)* ("The location in New York of firms, such as law firms and investment services, which perform services for [defendant] for a fee[,] does not represent activity by [defendant] in New York for jurisdictional purposes."); *Daniel, 988 F. Supp. at 223* ("Defendant's use of New York companies in issuing bonds to raise capital, the use of investment advisors or other New York professional organizations, and the hiring of New York attorneys [*20] ... are not sufficient contacts with New York to provide for jurisdiction ....").

The fact that plaintiffs have separately alleged the maintenance of bank accounts, the retention of counsel, and the engagement of financial advisors in New York does not mean that I can find, as I have before, that these activities are sufficient, in the aggregate, to confer jurisdiction on defendant. See *In re Ski Train Fire in Kaprun, Austria on November 11, 2000 (Siemens AG), 230 F. Supp. 2d 376, 383-84 (S.D.N.Y. 2002)* ("Kaprun Siemens AG") (holding that, although each of the alleged contacts did not itself confer jurisdiction, all of defendant's activities in New York, when considered together, constitute substantial and continuous business in the state). Here, unlike in Kaprun Siemens AG, defendant's utilization of New York based services is incidental to the main contact alleged — the leasing transactions. Clearly, all financial transactions require some level of managerial and/or administrative support. To hold that the activities that facilitated AHP's leasing transactions are sufficient to confer jurisdiction on this Court would be an end run around the well-settled [*21] law in this district that [HN5] "raising financing" does not constitute "doing business" under *section 301*.

Although plaintiffs' claim that AHP "purposefully created and uses a web-site designed to attract U.S. and N.Y. investors and/or customers," AHP Comp. P 3h, is distinct from the allegations related to the leasing transactions, it is — by itself and in combination with the leasing transactions — insufficient to confer jurisdiction. This Court has rejected on several occasions plaintiffs' efforts to predicate general jurisdiction on the fact that a defendant's website is accessible in New York. See *In re Ski Train Fire in Kaprun, Austria on November 11, 2000 (Siemens Austria), 230 F. Supp. 2d 403, 408 (S.D.N.Y. 2002)* ("Kaprun Siemens Austria") ("[HN6] 'The fact that a foreign corporation has a website accessible in New York is insufficient to confer jurisdiction under *CPLR § 301*.'") (quoting *Spencer Trask Ventures v. Archos S.A., 2002 U.S. Dist. LEXIS 4396, No. 01 Civ. 1169, 2002 WL 417192, at *6-7 (S.D.N.Y. Mar. 18, 2002)*); *Kaprun Siemens AG, 230 F. Supp. 2d at 383* ("Were it otherwise, every entity or individual that ran a highly interactive website from anywhere [*22] in the world could be sued for any reason in New York."); *In re Ski Train Fire in Kaprun, Austria on November 11, 2000 (Bosch Rexroth), 230 F. Supp. 2d 392, 400 (S.D.N.Y. 2002)* ("Kaprun Bosch Rexroth"). n12

---

n12 Plaintiffs have provided no additional information regarding their allegations in the Complaint that AHP has entered into a consortium with a U.S. utility company to purchase an Italian company. See AHP Compl. P 3a. To the extent that plaintiffs still assert this allegation as a basis for jurisdiction under *section 301*, they are directed to *Kaprun Siemens Austria, 230 F. Supp. 2d 403 at 408*, in which I held that "United States-based contacts" are insufficient to "allow New York courts to exercise general jurisdiction over a foreign corporation."

It is likewise unclear whether plaintiffs still assert, as a basis for jurisdiction, that American shareholders own a percentage of their stock. See AHP Compl. P 3e. In any event, any such American own-

ership in AHP stock, which is admittedly limited, see Pl. Br. at 12 n.11 (acknowledging that 80.33% of AHP is owned by an agency or instrumentality of Austria), is inadequate to confer personal jurisdiction in this state. The fact that a corporation has minority shareholders in a jurisdiction in no way indicates that it is engaged in continuous and systematic business in that jurisdiction.

[*23]

Thus, plaintiffs have failed to put forward "legally sufficient allegations of jurisdiction." *Jazini, 148 F.3d at 184*. AHP, by contrast, has submitted a sworn affidavit to the effect that AHP is not qualified or registered to do business in New York. See Kobau Dec. P 4. It derives no sales revenue from the State of New York. See id. P12. AHP does not employ any personnel, own or lease real property, perform public relations, or maintain an office in New York. See id. PP 9, 10, 13. Nor does it have a telephone listing or mailing address in New York. See id. P 11. In light of these statements and the lack of any meaningful contacts alleged by plaintiffs, AHP cannot be said to conduct "systematic and continuous" business in New York. n13

> n13 The sole case cited by plaintiffs, *Wiwa, 226 F.3d 88*, is inapposite. See Pl. Br. at 16-17. In Wiwa, two foreign holding companies, the corporate parents of Shell Oil Company, were found to be "doing business" in New York through their exclusive agents, who conducted business out of defendants' New York Investor Relations Office. The court's holding was based on the fact that the New York agents "devoted one hundred percent of their time to the defendants' business," and that "defendants fully funded the expenses of [an] Investor Relations Office." *Id. 226 F.3d 88 at 96*. In contrast to the Wiwa defendants, AHP does not maintain a New York office with exclusive agents, and has not established a permanent presence in New York through a continuous and systematic course of conduct.

[*24]

Having failed to meet their limited burden of establishing a prima facie case for this Court's exercise of personal jurisdiction, plaintiffs are not entitled to discovery. See *Jazini, 148 F.3d at 185-86* (denying request for jurisdictional discovery for failure to make out prima facie case); *Sodepac, S.A. v. Choyang Park In Rem*, 2002 U.S. Dist. LEXIS 19360, No. 02 Civ. 3927, 2002 WL 31296341, at *5 (S.D.N.Y. Oct. 10, 2002) (same); *Kaprun Siemens Austria, 230 F. Supp. at 412* (same). Moreover, plaintiffs have already taken some discovery regarding their main basis for jurisdiction — the cross-border leasing transactions. See *Kern v. Oesterreichische Elektrizitaetwirtschaft AG ("OE AG"), 178 F. Supp. 2d 367, 371 (S.D.N.Y. 2001)* (acknowledging that the magistrate judge granted limited discovery of materials related to AHP's leasing transactions that closed in New York during 1999-2001) (citing 10/11/01 Order of Magistrate Judge Theodore Katz). n14

> n14 Plaintiffs specifically request an opportunity to take discovery related to their factual assertion that monies from the leasing transactions supported the 1999 renovations of the train and tunnel, as well as the building of the Alpine Center. See Pl. Br. at 6-7 n.5 (citing Am. Compl. PP 227-252). Plaintiffs have already been afforded such opportunity and failed to establish any such connection. See *Kern, 178 F. Supp. 2d at 371-72* (citing Judge Katz's finding that "none of the information [produced in response to the discovery order] provided any support for plaintiffs' theory that the funds derived from the leasing transactions were intended to fund skiing activities at the site of the accident").

[*25]

## V. SERVICE OF PROCESS

AHP additionally argues that the Court lacks personal jurisdiction because service of process on AHP violated Austrian Law and *Rule 4 of the Federal Rules of Civil Procedure* in two respects: 1) AHP was served directly on Austrian territory by mail; and 2) the Complaint was not accompanied by a certified German translation. See Def. Br. at 19.

[HN7] *Rules 4(f) and (h)* provide that, in the absence of an internationally agreed method of service, such as the Hague Convention, n15 the following methods of service may be effected upon individuals or entities in a foreign country, provided that service is reasonably calculated to give notice:

> (A) in the manner prescribed by the law of the foreign country for service in that country in an action in any of its courts of general jurisdiction; or
>
> (B) as directed by the foreign authority in response to a letter rogatory or letter of request; or
>
> (C) unless prohibited by the law of the foreign country, by

(i) delivery to the individual personally of a copy of the summons and the complaint; or

(ii) any form of mail requiring a signed receipt, to be addressed and dispatched by the [*26] clerk of the court to the party to be served; or

(3) by other means not prohibited by international agreement as may be directed by the court.

> n15 Austria is not a party to the Hague Convention on the Service of Documents of 1965. See 12/09/01 Declaration of Dr. George E. Kodek Regarding Service of Process ("Kodec Dec."), Ex. 3 to Schneider Dec., at 5.

*Fed. R. Civ. P. 4(f)* (emphasis added).

[HN8] In Austria, like many other European civil law countries, the direct service of foreign legal documents by foreign authorities or by private individuals without the assistance or consent of Austrian authorities is regarded as an infringement of Austria's sovereignty. See 1/7/03 Note Verbale to the United States Embassy of America ("Note Verbale"), Ex. 1 to 1/27/03 Reply Declaration of Bruce H. Schneider, at 1; Kodec Dec. at 4 (citations omitted). Service of foreign legal documents must be "effected by letters rogatory through diplomatic channels, ... and in the manner prescribed by Austrian law [*27] for the service of such documents." Note Verbale at 1.

[HN9] Under Austrian federal law, "service of a foreign document in a foreign language, ... to which no certified German translation is attached, n16 shall only be permissible provided the recipient is willing to accept it." Id. at 2 (emphasis in original); Kodec Dec. at 5 (citations omitted). Acceptance is presumed unless within three days of the time of service the recipient instructs the Austrian authority that served the document to refuse acceptance. See Note Verbale at 2.

> n16 The translation of a legal document in judicial proceedings must be certified by a sworn court interpreter/translator. See Note Verbale at 2. The certified translation must include a certification clause together with a round seal affixed, which only certified court interpreters may use. See id.

Although service of AHP in this case was initially attempted by letters rogatory, it was ultimately achieved by direct mail, pursuant to an Order by this Court. [HN10] While *Rule* [*28] *4(f)(3)* provides for substitute service "as may be directed by the court," any such service must comport with the laws of the foreign country. See *Fed. R. Civ. P. 4(f)* Advisory Committee's note ("Service by methods that would violate foreign law is not generally authorized ... Inasmuch as our Constitution requires that reasonable notice be given, an earnest effort should be made to devise a method of communication that is consistent with due process and minimizes offense to foreign law.") (emphasis added); *International Controls Corp. v. Vesco, 593 F.2d 166, 179-80 (2d Cir. 1979)* (suggesting that substitute service should not "abrogate the methods of service prescribed by *Fed. R. Civ. P. 4*"); *East Cont'l Gems, Inc. v. Yakutiel, 153 Misc. 2d 883, 582 N.Y.S.2d 594, 595-96 (Sup. Ct. N.Y. Co. 1992)*, aff'd, *188 A.D.2d 402, 591 N.Y.S.2d 778 (1st Dep't)* (finding service by registered mail upon Swiss corporation invalid although it complied with New York law because "under the doctrine of comity of nations, such service to be valid must not violate the sovereignty of a foreign country"). Because service by direct mail is prohibited by Austrian law, service was improper [*29] here under *Rules 4(f)(2)(C)(ii) and 4(f)(3)*, as well as Austrian law. n17

> n17 The failure to provide a certified translation does not appear to constitute a violation of Austrian law because AHP did not refuse acceptance of the document the second time it was served.

As plaintiffs acknowledge, however, there have been no allegations that service was not effectuated, that AHP lacked actual notice, or that the translations were inaccurate. See Pl. Br. at 13. Accordingly, AHP may have waived the service of process issue. See Kodec Dec. at 6 (stating that a party that actively takes part in a foreign proceeding after having been served in a manner contrary to Austrian law, may waive the service of process issue). Moreover, plaintiffs should not be penalized for complying with this Court's order. Thus, the defects in service of process here do not warrant dismissal of the Complaint. However, I have already found that the Complaint should be dismissed on other grounds. Plaintiffs are directed to comply with all [*30] requirements of Austrian law in any future filings in this case.

## VIII. CONCLUSION

For the foregoing reasons, AHP's motion to dismiss for lack of personal jurisdiction is granted. The Clerk of

the Court is directed to dismiss the case against AHP.

SO ORDERED:

Shira A. Scheindlin

U.S.D.J.

Dated: April 3, 2003